USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT _________________________ No. 97-1579 DAVID P. PRATT, Petitioner, Appellant, v. UNITED STATES OF AMERICA, Respondent, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE [Hon. Steven J. McAuliffe, U.S. District Judge] ___________________ _________________________ Before Selya, Boudin and Stahl, Circuit Judges. ______________ _________________________ Leo T. Sorokin, Federal Defender Office, for appellant. ______________ Peter E. Papps, First Assistant United States Attorney, with ______________ whom Paul M. Gagnon, United States Attorney, was on brief, for _______________ appellee. _________________________ November 6, 1997 _________________________ SELYA, Circuit Judge. Petitioner-appellant David P. SELYA, Circuit Judge. _____________ Pratt, who is currently serving a federal sentence, filed a second petition for post-conviction relief under 28 U.S.C. 2255 (1994 and Supp. 1996).1 Relying on the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified in scattered sections of 28 U.S.C.), the district court dismissed the petition pro forma ___ _____ because Pratt had not obtained clearance from the court of appeals. AEDPA's novelty, together with the odd timing and peculiar circumstances of the petitioner's case, take us down a sometimes recondite legal trail. In the end, we conclude that AEDPA applies here and that, properly construed, it bars Pratt's attempt to prosecute a second habeas petition. I. BACKGROUND I. BACKGROUND In April of 1994, a federal petit jury in the District of New Hampshire heard testimony that, after a local police chief confiscated several of Pratt's firearms, Pratt sent him a mutilated pig carcass. Weighing this and other evidence, the jury found Pratt guilty of mailing a threatening communication in violation of 18 U.S.C. 876 (1994). The judge departed upward and sentenced Pratt to a lengthy prison term. The appeal period  ____________________ 1In terms, 28 U.S.C. 2255 speaks of a "motion" rather than a "petition," yet the latter word is more commonly used to describe the vehicle by which a person held in custody seeks post-conviction relief. Although there may be occasions on which the terms have different meanings, this is not one of them; and, therefore, we use the term "petition" throughout this opinion in order to avoid confusion. By the same token, we use the terms "section 2255 petition," "habeas petition," and "petition for post-conviction relief" interchangeably. 2 expired and Pratt's conviction became final. After unsuccessfully moving pro se to file a tardy notice of appeal, Pratt obtained fresh counsel and filed his first section 2255 petition on March 9, 1995. He alleged a violation of his Sixth Amendment right to the effective assistance of counsel premised on a claim that, despite repeated requests, his trial attorney had failed to perfect a timeous appeal of the conviction. Pratt did not aver, however, that his attorney's performance at trial was constitutionally defective. The district court granted the petition in an unpublished order, vacated the judgment, and resentenced Pratt (thus triggering a new appeal period). Pratt's new lawyer filed a timely appeal, but to no avail; a panel of this court affirmed the conviction. See Pratt v. United States, 73 F.3d 450, 454 (1st Cir. 1996).2 ___ _____ _____________ On January 17, 1997, Pratt filed his second section 2255 petition, this time seeking to set aside his conviction on the ground that his original lawyer's lack of trial acumen violated Pratt's Sixth Amendment right to the effective assistance of counsel. On April 8, 1997, the district court dismissed this petition without prejudice for failure to comport with AEDPA's "prior approval" prerequisite for second or successive habeas petitions. This appeal ensued.  ____________________ 2The panel did, however, remand, while retaining appellate jurisdiction, to obtain a clear statement of the reasons underlying the upward departure. See Pratt, 73 F.3d at 453-54. ___ _____ After Judge McAuliffe released an explanatory statement, see ___ United States v. Pratt, 940 F. Supp. 424 (D.N.H. 1996), the panel _____________ _____ issued an unpublished order dated August 8, 1996, making the affirmance unconditional. 3 II. ANALYSIS II. ANALYSIS AEDPA took effect on April 24, 1996, after the district court resolved Pratt's initial habeas petition but before his second petition eventuated. The new law imposes significant restrictions on second or successive habeas petitions brought on behalf of federal prisoners. These restrictions have both procedural and substantive dimensions. Procedurally, AEDPA incorporates by reference in section 2255 the same screen that AEDPA makes applicable to second or successive habeas petitions prosecuted on behalf of persons being held in state custody. The statute thus requires a federal prisoner, before docketing a second or successive habeas petition in the district court, to obtain from "the appropriate court of appeals . . . an order authorizing the district court to consider the application." 28 U.S.C. 2244(b)(3)(A) (as incorporated in 28 U.S.C. 2255); see ___ also Felker v. Turpin, 116 S. Ct. 2333, 2337 (1996). ____ ______ ______ Substantively, AEDPA directs the court of appeals to condition its authorization of a second or successive petition on the applicant's showing of either: (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable. 28 U.S.C. 2255. 4 This appeal necessitates that we determine whether Pratt's second section 2255 petition comes within AEDPA's reach, and if so, whether the statute permits us to authorize further proceedings in the district court. Before pursuing either of these inquiries, however, we pause to address the government's contention that this court lacks jurisdiction to hear the instant appeal. A. A. In the proceedings below, the district court dismissed Pratt's second habeas petition without prejudice, noting that he had failed to obtain clearance from the court of appeals as required by AEDPA. The government contends that, inasmuch as the order is not dispositive of any issue, it is not a "final order," 28 U.S.C. 1291 (1994), and thus cannot support the weight of an appeal. The government is wrong. AEDPA's prior approval provision allocates subject- matter jurisdiction to the court of appeals by stripping the district court of jurisdiction over a second or successive habeas petition unless and until the court of appeals has decreed that it may go forward. See Nu ez v. United States, 96 F.3d 990, 991 ___ _____ _____________ (7th Cir. 1996). This statutory directive means that a district court, faced with an unapproved second or successive habeas petition, must either dismiss it, see id., or transfer it to the ___ ___ appropriate court of appeals,3 see Benton v. Washington, 106 F.3d ___ ______ __________  ____________________ 3Transfers can be accomplished by resort to a statute that provides in pertinent part: 5 162, 164 (7th Cir. 1996); Liriano v. United States, 95 F.3d 119, _______ _____________ 122-23 (2d Cir. 1996). The court below chose the former course. If Pratt had acknowledged that AEDPA governed his latest petition, the district court's decision might not have been appealable. Here, however, Pratt disputes AEDPA's applicability. He can regain access to the district court (and thereby vindicate his theory) only by an appeal and a subsequent holding that the district court erred in applying AEDPA to his latest petition. The district court's order is therefore final in the relevant sense, see In re Nineteen Appeals Arising Out of ___ ______________________________________ the San Juan DuPont Plaza Hotel Fire Litig., 982 F.2d 603, 608 _____________________________________________ (1st Cir. 1992) (explaining that section 1291's finality requirement has a practical cast), and it is appealable. That the district court's dismissal was without prejudice is of no moment. Appellate courts routinely exercise jurisdiction over claims dismissed without prejudice when the dismissal contains sufficient indicia of finality. See, e.g., Presbytery of N.J. v. ___ ____ __________________  ____________________ Whenever a civil action is filed in a court . . . or an appeal . . . is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred. 28 U.S.C. 1631 (1994). 6 Florio, 40 F.3d 1454, 1461 (3d Cir. 1994); Kobleur v. Group ______ _______ _____ Hosp'n & Med. Servs., Inc., 954 F.2d 705, 708 (11th Cir. 1992); ___________________________ Brady v. Sullivan, 893 F.2d 872, 876 n.8 (7th Cir. 1989); Local _____ ________ _____ No. 714 v. Greater Portland Transit Dist., 589 F.2d 1, 6 (1st _______ _______________________________ Cir. 1978). To be sure, Pratt also contends that even if AEDPA applies generally to cases in the same temporal posture its provisions do not bar his pursuit of post-conviction relief. To this extent, the government's jurisdictional jousting may hit closer to home. Nevertheless, we need not spend much time on this largely metaphysical debate. In very similar circumstances, the Seventh Circuit has crafted a pragmatic approach to this sort of problem. It has declared that it will treat a notice of appeal as a request for an authorization to file a second section 2255 petition and thus preserve appellate jurisdiction if doing so will save unnecessary paperwork without sacrificing any party's substantial rights. See Nu ez, 96 F.3d at 991. ___ _____ Pratt invites us to employ that approach here, the appellate record is adequate to the task, and taking this avenue expedites adjudication of the matters in issue. We therefore hold that, when a district court dismisses a second or successive petition without prejudice because the court of appeals has not approved its prosecution, and the petitioner appeals, the court of appeals may in its discretion treat the notice of appeal as a request for authorization to file a second or successive petition. We exercise that discretion here to the extent, if at 7 all, that it may be necessary to do so. Either way, we have jurisdictionto hearand determinetheissues raisedin Pratt'sappeal. B. B. The filing dates of Pratt's two section 2255 petitions straddle AEDPA's effective date. On this basis, Pratt maintains that the question whether the statute applies to his second petition must be answered in the negative because doing so would place an impermissible retroactive burden on his first petition. We disagree. We begin our analysis by remarking the obvious: applying a statute to a pleading that was filed after the statute's effective date is not really a "retroactive" application in the classic sense. Here, moreover, we know on the best of authority that Congress intended that AEDPA apply to all section 2255 petitions filed after its effective date (April 24, 1996). See Lindh v. Murphy, 117 S. Ct. 2059, 2063 (1997). ___ _____ ______ We know, too, that the Supreme Court recently and uncritically applied AEDPA to a prisoner's second habeas petition even though the prisoner had filed his first petition prior to AEDPA's enactment. See Felker, 116 S. Ct. at 2336-37. Several ___ ______ courts of appeals have followed suit. See, e.g., In re Medina, ___ ____ ____________ 109 F.3d 1556, 1561-62 (11th Cir. 1997); Roldan v. United States, ______ _____________ 96 F.3d 1013, 1014 (7th Cir. 1996); Hatch v. Oklahoma, 92 F.3d _____ ________ 1012, 1014 (10th Cir. 1996). This approach is sound not only from a legal perspective but also from the standpoint of common 8 sense. After all, if pre-AEDPA jurisprudence somehow attached to an entire course of post-conviction proceedings by virtue of a prisoner's having filed a pre-enactment petition at some point along the way, then the Court's opinion in Felker would be ______ drained of all meaning. Faced with these formidable obstacles, Pratt attempts to refocus the definition of retroactivity. He reminds us of the Supreme Court's directive that a court which confronts a possible retroactivity problem should ask whether a freshly minted statute "attaches new legal consequences to events completed before its enactment." Landgraf v. USI Film Prods., 511 U.S. 244, 270 ________ _________________ (1994). Wielding this club, Pratt asserts that the application of AEDPA to his second petition impermissibly alters the legal consequences of his first petition (which was fully adjudicated prior to AEDPA's passage). This argument, in turn, leads him to embrace the "mousetrapping" doctrine. See Burris v. Parke, 95 ___ ______ _____ F.3d 465, 468-69 (7th Cir. 1996). Based on this construct (which to our knowledge has not been adopted outside the Seventh Circuit), he argues that, even if AEDPA otherwise might control his second habeas petition, it should not do so in the circumstances of this case.4  ____________________ 4This extra step is a necessary element of Pratt's position because an affirmative answer to the above-described Landgraf ________ inquiry does not automatically render a statute impermissibly retroactive. To the contrary, the Landgraf Court warned that a ________ "statute does not operate [retroactively] merely because it . . . upsets expectations based on prior law." 511 U.S. at 269. A conclusion of retroactivity instead "comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the 9 The particulars of Pratt's claim are fuzzy. He appears to be saying, with minimal elaboration, that the district court would have entertained his second section 2255 petition under the prevailing pre-AEDPA standard, see McCleskey v. Zant, 499 U.S. ___ _________ ____ 467, 493 (1991) (discussing the parameters of the "abuse of the writ" principle), and so, application of AEDPA's more stringent standard to his second section 2255 petition will attach new and unforeseen legal consequences to the filing of his first petition (in effect penalizing him retroactively for having failed to include all possible constitutional claims in his first petition). In Pratt's view, this adverse effect on his post- conviction litigation strategy "mousetraps" him. Even were we to address the mousetrapping doctrine a matter that we leave for another day Pratt could not take advantage of it. The doctrine requires a habeas petitioner to show that he consciously chose to withhold a potential ground for relief from his first petition because he detrimentally relied upon pre-AEDPA law. See, e.g., Alexander v. United States, 121 ___ ____ _________ _____________ F.3d 312, 314 (7th Cir. 1997); Roldan, 96 F.3d at 1014; see also ______ ___ ____ In re Magwood, 113 F.3d 1544, 1552-53 (11th Cir. 1997). Pratt ______________ cannot carry this burden. Although he states perfunctorily that he "relied upon the abuse of the writ law as it existed when he filed his [original] 2255" petition, he offers no legal or factual support for this conclusory statement. More is needed.  ____________________ operation of the new rule and a relevant past event." Id. at ___ 270. 10 See In re Medina, 109 F.3d at 1562 n.1 (holding that a ___ ______________ petitioner's "one-sentence conclusory statement" did not establish detrimental reliance). More important than Pratt's subjective understanding is the utter lack of any facts remotely suggesting detrimental reliance. "In assessing detrimental reliance vel non, the test ___ ___ is one of objective reasonableness under the circumstances." Henry v. Connolly, 910 F.2d 1000, 1003 (1st Cir. 1990). _____ ________ Accordingly, the question here is not whether Pratt actually believed, when he filed his first habeas petition, that then- prevailing law would allow him to file a second petition on the withheld ground of ineffective assistance of trial counsel so long as he could pass muster under McCleskey; the question, _________ rather, is whether such a subjective belief, even if it existed, is objectively reasonable. As a general matter, reliance upon pre-AEDPA law as a basis for permitting a second petition rarely will clear this hurdle. The "cause and prejudice" test that McCleskey imposed to _________ screen out abusive deployments of the writ is notoriously difficult to pass. See, e.g., McCleskey, 499 U.S. at 500; Murray ___ ____ _________ ______ v. Carrier, 477 U.S. 478, 495-96 (1986); United States v. Shaid, _______ _____________ _____ 937 F.2d 228, 236 (5th Cir. 1991); see generally Erwin ___ _________ Chemerinsky, Federal Jurisdiction 15.4.3, at 809-11 (2d ed. _____________________ 1994).5 Pratt cannot satisfy its rigors.  ____________________ 5Of course, the Seventh Circuit did make such a determination in Burris, 95 F.3d at 469-70. But there the court ______ predicated its finding of detrimental reliance on the notion that 11 The only reason that Pratt advances for exhuming his second habeas petition from the abuse of the writ graveyard is our statement in Bonneau v. United States, 961 F.2d 17, 23 (1st _______ _____________ Cir. 1992), to the effect that a prisoner who files a section 2255 petition in which he alleges that his attorney failed to perfect a direct appeal "must be treated like any other appellant appealing for the first time." But this statement has absolutely nothing to do with abuses of the writ; as Bonneau itself makes _______ clear in the immediately succeeding sentence, the language on which Pratt relies only "means that [the section 2255 petitioner] does not have to show that there are meritorious issues to be appealed." Id. Because Bonneau merely restates the ___ _______ uncontroversial rule that a federal habeas petitioner who alleges a Sixth Amendment deprivation grounded in his attorney's failure to perfect a direct appeal need not prove actual prejudice, see ___ Penson v. Ohio, 488 U.S. 75, 88 (1988), the single sentence that ______ ____ Pratt wrests out of context fails to serve his ends. With Bonneau out of the picture, Pratt's cupboard is _______ bare; he has not proffered any other basis for a finding of detrimental reliance. Consequently, we have no occasion to consider the merits of the mousetrapping doctrine because Pratt's case does not come within its ambit. Accord In re Magwood, 113 ______ _____________  ____________________ the government had waived any abuse of the writ defense to a second habeas petition during proceedings directed at the resolution of the first petition. See id. In contrast, Pratt ___ ___ does not allege that any statement or conduct on the government's part lulled him into believing that it would condone a second section 2255 petition. 12 F.2d at 1552-53 (distinguishing, but not endorsing, Burris); In ______ __ re Medina, 109 F.3d at 1562-63 (same). _________ To recapitulate, since Pratt has not shown that application of AEDPA to his second section 2255 petition works an impermissible retroactive effect, his second petition is, as a temporal matter, within AEDPA's jurisprudential reach. See ___ Lindh, 117 S. Ct. at 2063. _____ C. C. Pratt has another string to his bow. He maintains that the instant petition is not "second or successive" within AEDPA's contemplation and, hence, is not subject to the new statutory restrictions. Like prior habeas statutes, AEDPA does not define the mantra "second or successive." Courts that have interpreted the same phrase in relation to the pre-AEDPA version of 28 U.S.C.  2244(b) have determined that a numerically second petition is not "second or successive" if it attacks a different criminal judgment or if the earlier petition terminated without a judgment on the merits. See 2 James S. Liebman & Randy Hertz, Federal ___ _______ Habeas Corpus Practice and Procedure 28.3a, at 916-20 (2d ed. _____________________________________ 1994). We agree that AEDPA does not blunt the force of these interpretations, but we are not persuaded that the emergent rule pertains in the circumstances presented here. 1. 1. Decisions that construe the meaning of "second or 13 successive" most frequently concern a court's dismissal of a prisoner's first habeas petition for failure to exhaust state remedies. See, e.g., Howard v. Lewis, 905 F.2d 1318, 1322-23 ___ ____ ______ _____ (9th Cir. 1990); Hill v. Lockhart, 894 F.2d 1009, 1010 (8th Cir. ____ ________ 1990) (en banc). Recent post-AEDPA cases have hewed to the line exemplified by Howard and Hill and have preserved the rule that ______ ____ if the original petition did not produce an adjudication on the merits a prisoner's later petition will not be deemed "second or successive." See, e.g., In re Gasery, 116 F.3d 1051, 1052 (5th ___ ____ ____________ Cir. 1997); Christy v. Horn, 115 F.3d 201, 208 (3d Cir. 1997); _______ ____ Dickinson v. Maine, 101 F.3d 791, 791 (1st Cir. 1996); Camarano _________ _____ ________ v. Irvin, 98 F.3d 44, 46 (2d Cir. 1996). _____ In a federal forum, habeas petitions that involve federal prisoners, 28 U.S.C. 2255, differ from those that involve state prisoners, 28 U.S.C. 2241-2254, in that the former are not constrained by an exhaustion requirement. See 2 ___ Liebman & Hertz, supra, 41.4a, at 1196. In particular, claims _____ of ineffective assistance of counsel embodied in a section 2255 petition generally are not deemed procedurally defaulted simply because they were not raised on direct appeal. See, e.g., United ___ ____ ______ States v. Soldevila-Lopez, 17 F.3d 480, 485 (1st Cir. 1994); ______ _______________ United States v. Daniels, 3 F.3d 25, 26-27 (1st Cir. 1993). The _____________ _______ absence of a procedural bar opens an opportunity for overlap: a federal prisoner bent on asserting an ineffective assistance claim can simultaneously file a direct appeal of his conviction and a section 2255 petition, resulting in two federal courts 14 concurrently reviewing the same judgment. To prevent such redundancy, we have ruled that except in extraordinary circumstances we will dismiss a section 2255 petition claiming ineffective assistance of counsel as premature until the prisoner's direct appeal concludes. See United States v. Diaz- ___ _____________ _____ Martinez, 71 F.3d 946, 953 (1st Cir. 1995); United States v. ________ ______________ Gordon, 634 F.2d 638, 638-39 (1st Cir. 1980). ______ Pratt seizes upon this body of authority and argues that, under it, the district court probably would have dismissed as premature his ineffective assistance of trial counsel claim had he asserted it in his original petition. Thus, Pratt theorizes, failure to raise the claim in the initial petition is no different, practically speaking, than if the court had dismissed it without deciding the merits. Based on that analogy, he posits that applying AEDPA's restrictions to pretermit his later petition produces a fundamentally unfair whipsaw effect. We find Pratt's suppositional ex post justification for __ ____ his failure to include the claim of ineffective assistance of trial counsel in his initial habeas petition unconvincing for two reasons. First, and most obviously, we have classified section 2255 petitions as premature only when the petitioner's direct appeal was still pending. See, e.g., Diaz-Martinez, 71 F.3d at ___ ____ _____________ 953; Gordon, 634 F.2d at 638-39. Because no appeal was pending ______ in Pratt's case when he began his quest for collateral relief, the claim of ineffective assistance of trial counsel would not have been subject to dismissal as premature under our precedents. 15 Second, even if an included ineffective assistance of trial counsel claim might have been sidetracked once the district court cleared the way for a direct appeal, cf. United States v. ___ ______________ DeFalco, 644 F.2d 132, 137 (3d Cir. 1979) (en banc), Pratt still _______ had ample incentive to include the claim in his first petition. After all, he could not predict whether the district court would grant his original petition on the single ground that he actually asserted ineffective assistance anent counsel's failure to file a timely appeal and, had the district court denied relief, Pratt could not have asserted an unpreserved claim either on appeal or in a second petition.6 We discern no unfairness in holding Pratt to this regimen. The requirement that all available claims be presented in a prisoner's first habeas petition is consistent not only with the spirit of AEDPA's restrictions on second and successive habeas petitions, but also with the preexisting abuse of the writ principle. The requirement serves the singularly salutary purpose of forcing federal habeas petitioners to think through all potential post-conviction claims and to consolidate them for  ____________________ 6Although the existence of an incentive may affect the equitable balance, we note that, even in the absence of any incentive, the reported cases refuse to accept the position that Pratt espouses. For example, in Martinez-Villareal v. Stewart, __________________ _______ 118 F.3d 628 (9th Cir. 1997) (per curiam), cert. granted, 66 _____ _______ U.S.L.W. 3157 (U.S. Oct. 14, 1997) (No. 97-300), a case in which the habeas petitioner had absolutely no incentive to include a claim of incompetency to be executed in his first petition in all events, that claim automatically would have been deemed premature the Ninth Circuit stated that "a competency claim must be raised in the first petition." Id. at 634; accord In re ___ ______ _____ Davis, 121 F.3d 952, 955 (5th Cir. 1997). _____ 16 a unitary presentation to the district court. This exercise advances the cause of judicial efficiency and further justifies barring Pratt's second petition. See Richmond v. Ricketts, 774 ___ ________ ________ F.2d 957, 960 (9th Cir. 1985). 2. 2. Pratt mounts yet another argument in support of his plea that we not treat his numerically second petition as "second or successive." This argument derives from the Rules Governing Section 2255 Proceedings a set of rules that the Supreme Court has promulgated pursuant to congressionally delegated authority. See 28 U.S.C. 2072 (1994). Like all similar federal rules, ___ these rules carry the force and effect of positive law. See ___ Swazo v. Wyoming Dep't of Corrections State Penitentiary Warden, _____ ______________________________________________________ 23 F.3d 332, 333 (10th Cir. 1994); see also McCoy v. ___ ____ _____ Massachusetts Inst. of Tech., 950 F.2d 13, 21 (1st Cir. 1991). _____________________________ Rule 2(c) provides in relevant part that a habeas petition "shall be limited to the assertion of a claim for relief against one judgment only of the district court." AEDPA did not alter Rule 2(c), and the rule is potentially significant here because, after the district court granted Pratt's first section 2255 petition, it vacated Pratt's sentence and resentenced him in order to trigger a new appeal period. On this basis, Pratt asserts that the second petition challenges a different judgment and is therefore not "second or successive." This argument is attractive at first blush, but blemishes emerge upon closer study. 17 In the first place, although Pratt grasped avidly for this apparent lifeline when it surfaced at oral argument in this court, the appearance marked its debut in the case. It is firmly settled in this circuit that arguments not advanced and developed in an appellant's brief are deemed waived. See Sandstrom v. ___ _________ ChemLawn Corp., 904 F.2d 83, 87 (1st Cir. 1990). ______________ In the second place, this laglast argument is more a makeweight than a lifeline. The district court's method of restoring Pratt's right to an appeal vacating the sentence and then reimposing it is standard practice among federal courts. See, e.g., United States v. Pearce, 992 F.2d 1021, 1023 (10th ___ ____ _____________ ______ Cir. 1993); Page v. United States, 884 F.2d 300, 302 (7th Cir. ____ _____________ 1989). Although a reentered judgment of conviction, identical in all material respects to the judgment that it supplanted, technically may be "new," the vital question for present purposes is whether it is a type of new judgment that is subject to challenge in a second habeas petition without regard to earlier petitions addressed to the original judgment. We hold that it is not. Under ordinary circumstances, a prisoner who successfully brings a habeas petition and is retried, reconvicted, and resentenced may collaterally attack the new judgment without fear of hindrance by the legal restrictions that encumber second or successive habeas petitions. See Palmer v. ___ ______ Clarke, 961 F.2d 771, 774-75 (8th Cir. 1992); Richmond, 774 F.2d ______ ________ at 960. Nevertheless, this opportunity to petition freely for 18 post-conviction relief after a new judgment of conviction is not unfettered. As a general rule, a prisoner who had both the incentive and the ability to raise a particular claim in his first petition for post-conviction relief, but declined to assert it, cannot raise it the second time around. To illustrate, if the relief granted in response to an initial habeas petition addresses only the petitioner's sentence, he customarily cannot re-petition after resentencing based on alleged errors affecting the underlying conviction. See ___ Richmond, 774 F.2d at 960. The rationale for such a holding is ________ clear: the prisoner had ample incentive to challenge the underlying conviction in his first request for post-conviction relief since success on a claim of trial error would have wiped out the sentence and obviated the need to address any sentencing bevues; and, assuming that the prisoner had the ability to raise the trial-error claim in his first petition, there is no principled reason why the restrictions designed for second or successive petitions should not apply. See id. ___ ___ This rationale applies squarely to Pratt. He had every incentive to assert his claim of trial error in his initial section 2255 petition. If the district court agreed that his lawyer's trial performance was constitutionally defective, then there would have been no need to appeal a faulty conviction. The objective that Congress had in mind when it placed curbs on a prisoner's freedom to file multiple habeas petitions would be frustrated if a prisoner could negate the legal effect of this 19 kind of omission by the simple expedient of filing another petition. There is a related reason why the reentered judgment does not transform the legal landscape. It is an abecedarian rule that, in a second petition for post-conviction relief, the prisoner must be able to point to a new claim of error that is, a claim of error unavailable the first time around (because, say, it could not have been discovered in the exercise of reasonable diligence or it arose after the resolution of the initial petition). See 2 Liebman & Hertz, supra, 26.3b, at 854-56; id. ___ _____ ___ 28.1, at 896. For example, if a habeas petition results in a retrial that yields a new conviction, the prisoner is free to seek further habeas relief based on errors that transpired in the course of the new trial. See Palmer, 961 F.2d at 774-75. ___ ______ Similarly, if a habeas petition results in a resentencing, the prisoner is free to petition for further relief based on errors that transpired in the course of the resentencing. See Richmond, ___ ________ 774 F.2d at 960. In both cases, the prisoner is seeking redress for errors that he could not have challenged in a prior post- conviction proceeding unless he were clairvoyant. Unpursued errors arising out of events that occurred before the filing of the initial habeas petition, and which could have been, but were not, challenged in that petition, fall into a different category. Those errors normally are not eligible for inclusion in a subsequent habeas petition. See Palmer, 961 F.2d at 774-75. ___ ______ Measured against the rule, as explicated by these 20 examples, Pratt's asseveration falls short. His current section 2255 petition seeks to set aside the underlying conviction on a ground that he could have raised, but did not, when he filed his first petition. Pratt does not assert any claim of error that became available only after, or as a result of, the court's entry of a new judgment of conviction. Thus, his numerically second petition is in fact a second petition as AEDPA uses that term. D. D. The end draws near. Pratt concedes in his appellate brief that he is unable to satisfy AEDPA's preconditions for filing a second section 2255 petition. In any event, this concession is compelled by the record: Pratt neither claims to possess newly discovered evidence in support of the petition nor invokes a neoteric rule of constitutional law. See 28 U.S.C.  ___ 2255. We need go no further. Pratt failed to marshal all his claims of error in his first section 2255 petition, and he must now pay the piper. AEDPA governs here, and, on the facts of this case, AEDPA's clear language prohibits Pratt from rectifying his omission by means of a second petition. The district court's dismissal of the habeas petition The district court's dismissal of the habeas petition _______________________________________________________ is affirmed. The petitioner's appeal is treated concurrently as is affirmed. The petitioner's appeal is treated concurrently as ___________ ___________________________________________________ a request for leave to file a second or successive habeas a request for leave to file a second or successive habeas _________________________________________________________________ petition and, as such, it is denied. petition and, as such, it is denied. ___________________________________ 21